**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.                                        No. 96-4500

DAYNA R. PATRICK LAYMAN,
Defendant-Appellee.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                        No. 96-4533

JOE BENNETT SMITH, III,
Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, District Judge.
(CR-95-65-R)

Argued: May 6, 1997

Decided: June 24, 1997

Before WILKINSON, Chief Judge, WILKINS, Circuit Judge, and
TRAXLER, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed in part and vacated and remanded with instructions in part
by published opinion. Judge Wilkins wrote the opinion, in which
Chief Judge Wilkinson and Judge Traxler joined.

_____

**COUNSEL**

**ARGUED:** Joseph William Hooge Mott, Assistant United States Attorney, Roanoke, Virginia, for Appellant. John E. Lichtenstein, LICHTENSTEIN & FISHWICK, P.L.C., Roanoke, Virginia, for Appellee Layman; Jonathan M. Rogers, JONATHAN ROGERS, P.C., Roanoke, Virginia, for Appellee Smith. **ON BRIEF:** Robert P. Crouch, Jr., United States Attorney, Daniel Campbell, Third Year Law Intern, Roanoke, Virginia, for Appellant. Charles M. Smith, Jr., LICHTENSTEIN & FISHWICK, P.L.C., Roanoke, Virginia, for Appellee Layman.

_____

**OPINION**

WILKINS, Circuit Judge:

The United States appeals the sentence imposed on Dayna R. Patrick Layman following her plea of guilty to conspiracy to manufacture and to distribute marijuana, see 21 U.S.C.A. § 841(a)(1) (West 1981), arguing that the district court improperly changed the sentence after it had been pronounced. Joe Bennett Smith, III cross-appeals his sentence, also imposed following a plea of guilty to conspiracy to manufacture and to distribute marijuana, see id. , primarily contending that the district court incorrectly applied the 100-gram-per-plant equivalency ratio found in the Sentencing Guidelines because no marijuana plants were seized. See U.S. Sentencing Guidelines Manual § 2D1.1(c) (n.*(E)) (1995). We conclude that because the sentence was imposed on Layman when it was orally pronounced in open court, the district court lacked authority to alter the sentence absent "arithmetical, technical, or other clear error." See Fed. R. Crim. P. 35(c). And, since the modification of Layman's sentence was not prompted by any such error, we vacate the modified sentence and remand with instructions to impose the sentence as originally pronounced. Additionally, we hold that the equivalency ratio applies to any offense involving the cultivation of marijuana plants, regardless of whether live plants are actually seized. So, finding no error with respect to Smith's sentence, we affirm it.

2

I.

In 1988, Layman and her husband, Victor, approached George and Cheryl Fender with a plan to grow large quantities of high-quality marijuana in the area of Roanoke, Virginia. The responsibilities of the conspiracy would be divided: The Fenders would grow the marijuana in "grow houses" financed by Smith, while Victor would process and distribute the marijuana. Eventually, the conspiracy expanded to include other individuals who operated additional grow houses. The conspiracy continued until 1995 when the participants were indicted.

On May 17, 1996, a Friday, Layman appeared for sentencing. The district court determined that Layman's guideline range was 6-12 months and sentenced her to nine months imprisonment to be followed by a 36-month term of supervised release. No written order of conviction was filed at that time.

During the weekend, Layman and Victor each wrote a letter to the court requesting that it modify the sentence to place Layman in home detention. And, Layman subsequently filed a motion formally requesting such a sentence. The district court convened a hearing on the motion at which it made clear that it considered the proceedings to be a continuation of the May 17 hearing and that its oral pronouncement of sentence at that hearing did not constitute the "imposition of sentence" within the meaning of Rule 35(c). After hearing argument from the parties, the district court sentenced Layman to nine months of home confinement and supervised release of 36 months, stating that it adhered to the previous sentence but was imposing home confinement as a substitute for imprisonment. On June 4, the district court conducted yet another sentencing hearing after the probation officer informed the court that the sentence imposed was not permitted by the guidelines.[1] At that hearing, the court sentenced Layman to 36 months probation, with nine months home detention as a condition of probation. See U.S.S.G. § 5C1.1(c)(3).

_____

[1] Pursuant to U.S.S.G. § 5C1.1(c)(2), the district court could have sentenced Layman to a term of supervised release including home detention, but only if at least one month of the sentence was satisfied by imprisonment.

3

Smith's written guilty plea stipulated a drug quantity of between 40 and 120 kilograms of marijuana, with the precise amount to be determined by the district court at sentencing. Because there was no direct evidence available concerning the number of marijuana plants actually grown by the conspirators, the presentence report (PSR) employed a formula based on electrical bills to estimate the number of plants grown at the houses with which Smith was involved. The PSR then applied the 100-gram-per-plant equivalency ratio to arrive at a quantity of marijuana to be attributed to Smith. At sentencing, the district court observed that it was difficult to determine the precise amount of marijuana that should be attributed to Smith. Nevertheless, the court found Smith responsible for between 80 and 100 kilograms of the drug, noting that although the actual amount of marijuana was far greater than the amount stipulated in the plea agreement, it had "bent over backwards to give [Smith] the benefit of the doubt." J.A. 401. The district court sentenced Smith to 57 months imprisonment.

II.

The parties agree that the only question presented by Layman's appeal is whether the district court had authority to modify Layman's sentence after it had been pronounced during the May 17 hearing. Federal Rule of Criminal Procedure 35(c) allows a district court to alter a sentence only to "correct a sentence that was imposed as a result of arithmetical, technical, or other clear error" within seven days of the "imposition of sentence."[2] The authority of the district court to modify a sentence pursuant to Rule 35(c) is severely limited. See generally United States v. Abreu-Cabrera, 64 F.3d 67, 71 (2d Cir. 1995) (discussing the history of Rule 35(c)). The rule "is not intended to afford the court the opportunity to reconsider the application or interpretation of the sentencing guidelines or for the court simply to change its mind about the appropriateness of the sentence." Fed. R. Crim. P. 35 advisory committee's note; see also United States v. Cook, 890 F.2d 672, 675 (4th Cir. 1989) (noting that "[t]he power of

_____

[2] It is undisputed that neither Rule 35(a), allowing a district court to modify a sentence on remand from the court of appeals, nor Rule 35(b), permitting amendment of a sentence pursuant to a motion by the Government within one year of the imposition of sentence, applies here. See Fed. R. Crim. P. 35(a), (b).

4

a district court to amend a sentence does not extend to a situation where the district judge simply changes his mind").

The Government argues that sentence was imposed on Layman when the district court orally pronounced it during the May 17 hearing, so that any subsequent amendments to the sentence were restricted to the circumstances set forth in Rule 35(c). Further, the Government contends that the action of the district court in this case does not fall within the parameters of that rule. Layman responds that a sentence is not imposed until the court enters a written judgment and that until that time, the district court is free to manipulate the sentence as it sees fit. This is a legal issue subject to de novo review. See United States v. Blackwell, 81 F.3d 945, 947 (10th Cir. 1996).

Although we have not yet had occasion to rule on this question, the Second and Tenth Circuits have held that a sentence is imposed for purposes of Rule 35(c) when it is orally pronounced by the district court. See Abreu-Cabrera, 64 F.3d at 73-74; United States v. Townsend, 33 F.3d 1230, 1231 (10th Cir. 1994); see also United States v. Navarro-Espinosa, 30 F.3d 1169, 1170 (9th Cir. 1994) (noting that "the phrase `imposition of sentence' is a term of art that generally refers to the time at which a sentence is orally pronounced"). The Seventh Circuit, however, has reached a contrary conclusion, linking the imposition of sentence for purposes of Rule 35(c) to the entry of a judgment of conviction. See United States v. Clay, 37 F.3d 338, 340 (7th Cir. 1994).

We conclude that a sentence is imposed for purposes of Rule 35(c) when it is orally pronounced by the district court. As the Tenth Circuit reasoned in Townsend:

> It is well established that a sentence orally imposed governs a conflicting, later-written sentence of the court. This rule is grounded in the Sixth Amendment[,] which requires that a defendant be physically present at sentencing. When a judgment of conviction containing the sentence is officially entered of record, only members of the clerk's office are present. This cannot be what Congress meant in Rule 35(c) by "imposition of sentence" in light of the Sixth Amendment.

5

Townsend, 33 F.3d at 1231. Moreover, a rule that sentence is "imposed" when it is orally pronounced better promotes the goal of finality in sentencing. See Abreu-Cabrera, 64 F.3d at 74. Otherwise, a district court could simply delay the ministerial task of filing a judgment, thereby providing the court an indefinite period of time in which to change its mind about the sentence. See id.; see also Cook, 890 F.2d at 674-75 (observing that the purpose of the amendments to Rule 35 "was to impose on the new sentencing system a requirement that the sentence imposed in the public forum during the sentencing hearing would remain constant, immune from later modification" (emphasis added)).

The district court orally pronounced Layman's sentence, and thus imposed it, during the May 17 hearing. At the conclusion of that hearing, all that remained to be done was the ministerial task of entering the judgment. Accordingly, Rule 35(c) governed the authority of the district court to amend Layman's sentence. The modification of Layman's sentence by the district court clearly was not for the purpose of correcting "arithmetical, technical, or other clear error" in sentencing, but rather was the product of a change of heart by the sentencing judge. Fed. R. Crim. P. 35(c). Therefore, we vacate Layman's sentence and remand with instructions to impose the sentence pronounced by the district court at the May 17 hearing.

III.

In his cross-appeal, Smith argues that the district court erred in determining the amount of marijuana attributable to him for sentencing purposes, principally contending that the court improperly applied the 100-gram-per-plant equivalency ratio of U.S.S.G. § 2D1.1(c) (n.*(E)). Note *(E) instructs that "[i]n the case of an offense involving marijuana plants," the district court should apply the equivalency ratio unless the weight of the marijuana actually produced is greater. Id. Smith maintains that because the plants attributed to him had long since been harvested and the resulting marijuana distributed when the investigation of the conspiracy began, the offense was not one "involving marijuana plants." Thus, he contends, the district court should not have determined drug quantity based on an application of the equivalency ratio to the number of plants involved in the offense, but rather on the actual amount of marijuana produced. The proper inter-

6

pretation of § 2D1.1(c) (n.*(E)) is a legal issue, which we review de novo. See United States v. Jones, 31 F.3d 1304, 1315 (4th Cir. 1994).

The circuit courts of appeals are divided with respect to when an offense is one "involving marijuana plants" so that the equivalency ratio applies. See, e.g., United States v. Fletcher, 74 F.3d 49, 55 n.5 (4th Cir.), cert. denied, 117 S. Ct. 157 (1996). The Second Circuit Court of Appeals has concluded that the equivalency ratio should be applied only when live plants are seized. See United States v. Blume, 967 F.2d 45, 49-50 (2d Cir. 1992) (concluding that the district court erred in estimating the number of plants previously grown rather than basing drug quantity on testimony concerning the amount of marijuana actually produced). Most circuits, however, have concluded that when a defendant has been involved in the growing of marijuana for subsequent distribution, the offense is one "involving marijuana plants" and thus the equivalency ratio applies regardless of whether plants are seized. See United States v. Shields , 87 F.3d 1194, 1197 (11th Cir. 1996) (en banc) (ruling that, in case involving live plants and dead stalks, district court properly sentenced based on the total number of plants because "nothing in [§ 2D1.1(c) (n.*(E))] ... suggests that [its] application depends upon whether the marijuana plants are harvested before or after authorities apprehend the grower"); United States v. Wilson, 49 F.3d 406, 410 (8th Cir.) (holding that when a defendant participates "in the planting, cultivation, and harvesting of marijuana plants," the equivalency ratio applies even though "the marijuana ... was harvested, shucked, packaged, and sold many months before law enforcement personnel intervened"), cert. denied, 116 S. Ct. 384 (1995); United States v. Wegner, 46 F.3d 924, 927-28 (9th Cir. 1995) (same); United States v. Haynes, 969 F.2d 569, 571-72 (7th Cir. 1992) (determining that drug quantity is properly based on the number of plants harvested if application of the equivalency ratio results in a quantity of marijuana greater than the amount actually produced).

We agree with the majority of courts to have addressed this issue that the equivalency ratio of § 2D1.1(c) (n.*(E)) applies to all offenses involving the growing of marijuana, regardless of whether plants are seized. Thus, we conclude that the district court properly sentenced Smith by applying the equivalency ratio to the number of plants grown during his involvement in the conspiracy.

7

Smith also contends that the district court erred in its calculation of the number of plants for which he was responsible. Factual determinations by the district court are reviewed for clear error. See Jones, 31 F.3d at 1315. We conclude that the evidence more than adequately justifies the conclusion of the district court that Smith was responsible for at least 80 kilograms of marijuana, or 800 plants. The PSR estimated that Smith was responsible for at least 2,300 plants. Accordingly, we determine that the district court did not err in calculating the amount of marijuana attributable to Smith for sentencing purposes, and we affirm his sentence.

IV.

In sum, we hold that a sentence is imposed for purposes of Federal Rule Criminal Procedure 35(c) when it is orally pronounced by the district court. Subsequent to the oral pronouncement of sentence, Rule 35(c) allows alteration of the sentence only to correct "arithmetical, technical, or other clear error." Fed. R. Crim. P. 35(c). Because the district court modified Layman's sentence after it had been imposed in open court, and because this modification does not fall within the parameters of Rule 35(c), we vacate Layman's sentence and remand with instructions to impose the sentence originally pronounced. Additionally, we conclude that the district court properly applied the equivalency ratio of U.S.S.G. § 2D1.1(c) (n.*(E)) and did not otherwise err in its calculation of Smith's sentence. Accordingly, we affirm it.

AFFIRMED IN PART; VACATED AND REMANDED WITH INSTRUCTIONS IN PART